UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

SALLY LYNN CARMACK,

    Plaintiff,                                                       Civil Action No. 16-CV-13607

vs.                                                                       HON. BERNARD A. FRIEDMAN

COMMISSIONER OF
SOCIAL SECURITY,

    Defendant.

_____/

**OPINION AND ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT, DENYING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT, AND REMANDING FOR FURTHER PROCEEDINGS**

This matter is presently before the Court on cross motions for summary judgment [docket entries 15 and 16]. Pursuant to E.D. Mich. LR 7.1(f)(2), the Court shall decide these motions without a hearing. For the reasons stated below, the Court shall grant plaintiff's motion, deny defendant's motion, and remand the case for further proceedings.

Plaintiff has brought this action under 42 U.S.C. § 405(g) to challenge defendant's final decision denying her application for Supplemental Security Income ("SSI") benefits. An Administrative Law Judge ("ALJ") held a hearing in June 2015 (Tr. 26-52) and issued a decision denying benefits in August 2015 (Tr. 10-21). This became defendant's final decision in August 2016 when the Appeals Council denied plaintiff's request for review (Tr. 1-3).

Under § 405(g), the issue before the Court is whether the ALJ's decision is supported by substantial evidence. As the Sixth Circuit has explained, the Court

> must affirm the Commissioner's findings if they are supported by substantial evidence and the Commissioner employed the proper legal standard. *White*, 572 F.3d at 281 (citing 42 U.S.C. § 405(g)); *Elam ex rel. Golay v. Comm'r of Soc. Sec.*, 348 F.3d 124, 125 (6th

> Cir. 2003); *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 528 (6th Cir. 1997). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401, 91 S.Ct. 1420, 28 L.Ed.2d 842 (1971) (internal quotation marks omitted); see also *Kyle*, 609 F.3d at 854 (quoting *Lindsley v. Comm'r of Soc. Sec.*, 560 F.3d 601, 604 (6th Cir. 2009)). Where the Commissioner's decision is supported by substantial evidence, it must be upheld even if the record might support a contrary conclusion. *Smith v. Sec'y of Health & Human Servs.*, 893 F.2d 106, 108 (6th Cir. 1989). However, a substantiality of evidence evaluation does not permit a selective reading of the record. "Substantiality of the evidence must be based upon the record taken as a whole. Substantial evidence is not simply some evidence, or even a great deal of evidence. Rather, the substantiality of evidence must take into account whatever in the record fairly detracts from its weight." *Garner v. Heckler*, 745 F.2d 383, 388 (6th Cir. 1984) (internal citations and quotation marks omitted).

*Brooks v. Comm'r of Soc. Sec.*, 531 F. App'x 636, 640-41 (6th Cir. 2013).

At the time of her February 2015 hearing, plaintiff was 45 years old (Tr. 49). She has a high school education and no relevant work experience (Tr. 49). Plaintiff claims she has been disabled since September 2012 due to migraines, depression, dyslexia, and nerve damage in her back, shoulders, and neck (Tr. 155-56).

The ALJ found that plaintiff's severe impairments are "dysfunction of a major joint, spine disorder, disorders of muscle, ligament and fascia, and migraines" and that her affective disorder is nonsevere (Tr. 15). He found that despite these impairments plaintiff has the residual functional capacity ("RFC") to perform "light work as defined in 20 CFR 416.967(b)[1] except

---

[1] Section 416.967(b) defines light work as follows:

> Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or

2

frequent overhead reaching; never climb ladders and scaffolds; and occasionally crawl" (Tr. 17). A vocational expert ("VE") testified in response to a hypothetical question that a person of plaintiff's age, education, and work experience, and who has this RFC, could perform certain unskilled, light-level jobs such as an inspector, packager, and office cleaner (Tr. 50). The ALJ cited this testimony as evidence that work exists in significant numbers that plaintiff could perform and concluded that she is not disabled (Tr. 20-21).

Having reviewed the administrative record and the parties' briefs, the Court concludes that the ALJ's decision in this matter is not supported by substantial evidence because his RFC evaluation of plaintiff is flawed. Since the hypothetical question incorporated this flawed RFC evaluation, it failed to describe plaintiff in all relevant respects and the VE's testimony given in response thereto cannot be used to carry defendant's burden to prove the existence of a significant number of jobs plaintiff is capable of performing.

Plaintiff's RFC evaluation is flawed for the following reasons. First, the ALJ failed to consider the side effects of plaintiff's medications. The record indicates that plaintiff takes, or at various times has taken, a number of medications, including Cymbalta, Norco, Vicodin, Butalbital, Desipramine, Hydrocodone, Sumatriptan, Topamax, Gabapentin (Neurontin), Methocarbamo (Robaxin), Naproxen, Sumatriptan (Imitrex), Flexeril, Percocet, Maloxicam, Wellbutrin, Bupropion, Duloxetine, and Topiramate (Tr. 31, 158, 183, 229-30, 232, 234, 237, 330, 338, 357, 442, 458), many of which have known side effects. On her function and disability reports

---

when it involves sitting most of the time with some pushing and pulling of arm or leg controls. To be considered capable of performing a full or wide range of light work, you must have the ability to do substantially all of these activities.

plaintiff reported side effects of drowsiness, mood swings, and depression (Tr. 183, 192) and at the hearing she testified that her medications make her feel drowsy (Tr. 47). Further, two of plaintiff's physicians noted she experiences drowsiness and fatigue as medication side effects (Tr. 322, 324), while another noted that one of plaintiff's headache medications "helps but decreases function" (Tr. 377).

The ALJ's failure to make any findings as to this issue is an error requiring remand, as the Sixth Circuit has held that the ALJ must evaluate "[t]he type, dosage, effectiveness, and side effects of any medication" as part of the process of determining the extent to which side effects impair a claimant's capacity to work. *Keeton v. Comm'r of Soc. Sec.*, 583 F. App'x 515, 532 (6th Cir. 2014) (quoting 20 C.F.R. § 416.929(c)(3)(i)-(vi)). Further, hypothetical questions to vocational experts must account for medication side effects. *See White v. Comm'r of Soc. Sec.*, 312 F. App'x 779, 789-90 (6th Cir. 2009). On remand, the ALJ must determine which medications plaintiff was taking during the relevant time period; make findings as to the nature and severity of these medications' side effects, if any; adjust his findings as appropriate regarding plaintiff's RFC; and incorporate these findings in proper hypothetical questions to the VE.

Second, the RFC evaluation is flawed because the ALJ neglected to make required findings concerning the effect, if any, of plaintiff's obesity on her other impairments. The record contains several notations that plaintiff's body mass index ("BMI) is over 30 (*see, e.g.,* Tr. 215, 230, 340, 413, 464, 468, 471, 490), which is the point at which defendant's regulations consider a person to be obese. *See* SSR 02-1p. Under this SSR, the ALJ must consider a disability claimant's obesity at all steps of the sequential process. *See id.,* Policy Interpretation ¶ 3. Further,

> [o]besity is a medically determinable impairment that is often associated with disturbance of the musculoskeletal system, and

4

> disturbance of this system can be a major cause of disability in individuals with obesity. The combined effects of obesity with musculoskeletal impairments can be greater than the effects of each of the impairments considered separately. Therefore, when determining whether an individual with obesity has a listing-level impairment or combination of impairments, and when assessing a claim at other steps of the sequential evaluation process, including when assessing an individual's residual functional capacity, adjudicators *must consider* any additional and cumulative effects of obesity.

20 C.F.R. Pt. 404, Subpt. P, App. 1 § 1.00Q (emphasis added).

In the present case, there is no indication that the ALJ gave any consideration to plaintiff's obesity. On remand, the ALJ must make specific findings as to the effect, if any, of plaintiff's obesity on her other impairments. In particular, the ALJ must determine whether and to what extent plaintiff's obesity exacerbates the pain in her neck, shoulders, and back, and/or diminishes her ability to sit, stand, walk, or concentrate. The ALJ must include any such findings in reevaluating plaintiff's RFC and, as appropriate, in framing revised hypothetical question(s) to the VE.

Third, the RFC evaluation in this matter is flawed because the ALJ did not adequately explain why he discounted plaintiff's credibility. In addition to testifying about her medication side effects, plaintiff testified that she can sit for at most an hour before needing to change position; that if she stands longer than 20 minutes she needs something to lean on; that she can lift at most ten pounds; and that once per month she experiences migraine headaches which incapacitate her for three to four days at a time (Tr. 35-36, 40, 45-46). If plaintiff's testimony regarding her limited ability to sit, stand, and lift is credited, it would appear she lacks the RFC to do light-level work; and if her testimony regarding her migraines is credited, all work would be precluded, according to the VE (Tr. 51).

The ALJ is not required to accept a claimant's testimony, but if he rejects testimony on credibility grounds, he must state his reasons for doing so and the reasons must be supported by substantial evidence. As the Sixth Circuit has explained,

> the ALJ is not free to make credibility determinations based solely upon an "intangible or intuitive notion about an individual's credibility." Soc. Sec. Rul. 96-7p, 1996 WL 374186, at *4. Rather, such determinations must find support in the record. Whenever a claimant's complaints regarding symptoms, or their intensity and persistence, are not supported by objective medical evidence, the ALJ must make a determination of the credibility of the claimant in connection with his or her complaints "based on a consideration of the entire case record." The entire case record includes any medical signs and lab findings, the claimant's own complaints of symptoms, any information provided by the treating physicians and others, as well as any other relevant evidence contained in the record. Consistency of the various pieces of information contained in the record should be scrutinized. Consistency between a claimant's symptom complaints and the other evidence in the record tends to support the credibility of the claimant, while inconsistency, although not necessarily defeating, should have the opposite effect.
>
> Social Security Ruling 96-7p also requires the ALJ explain his credibility determinations in his decision such that it "must be sufficiently specific to make clear to the individual and to any subsequent reviewers the weight the adjudicator gave to the individual's statements and the reasons for that weight." In other words, blanket assertions that the claimant is not believable will not pass muster, nor will explanations as to credibility which are not consistent with the entire record and the weight of the relevant evidence. And given the nature of fibromyalgia, where subjective pain complaints play an important role in the diagnosis and treatment of the condition, providing justification for discounting a claimant's statements is particularly important. *Hurst v. Sec'y of Health & Human Servs.*, 753 F.2d 517, 519 (6th Cir.1985).

*Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 247-48 (6th Cir. 2007) (footnote omitted). Plaintiff does not have fibromyalgia, but her subjective complaints regarding her headaches/migraines are "particularly important" for the same reasons.

On remand, the ALJ must reevaluate plaintiff's credibility. It simply does not suffice for the ALJ to assert, without any elaboration or citation to the record, that her "allegations . . . [are] inconsistent with the objective medical findings . . . [and] not well supported by the objective medical evidence" (Tr. 19). A credibility determination of this nature is not "sufficiently specific to make clear to the individual and to any subsequent reviewers the weight the adjudicator gave to the individual's statements and the reasons for that weight." On remand, if the ALJ again decides to reject plaintiff's testimony or any portion thereof, he must provide a reasoned explanation for doing so and support his reasons with specific record citations. To the extent the ALJ decides to credit plaintiff's testimony, he must revise his RFC evaluation and his hypothetical questions to the VE accordingly.

Fourth, the RFC evaluation in this matter is flawed because the ALJ failed to explain sufficiently why he disregarded the opinions of plaintiff's treating physicians. As the Sixth Circuit has explained,

> [i]n assessing the medical evidence supplied in support of a claim, there are certain governing standards to which an ALJ must adhere. Key among these is that greater deference is generally given to the opinions of treating physicians than to those of non-treating physicians, commonly known as the treating physician rule. *See* Soc. Sec. Rul. 96–2p, 1996 WL 374188 (July 2, 1996); *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 544 (6th Cir.2004). Because treating physicians are "the medical professionals most able to provide a detailed, longitudinal picture of [a claimant's] medical impairment(s) and may bring a unique perspective to the medical evidence that cannot be obtained from the objective medical findings alone," their opinions are generally accorded more weight than those of non-treating physicians. 20 C.F.R. § 416.927(d)(2). Therefore, if the opinion of the treating physician as to the nature and severity of a claimant's conditions is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with other substantial evidence in [the] case record," then it will be accorded controlling weight. *Wilson*, 378 F.3d at 544. When the

7

> treating physician's opinion is not controlling, the ALJ, in determining how much weight is appropriate, must consider a host of factors, including the length, frequency, nature, and extent of the treatment relationship; the supportability and consistency of the physician's conclusions; the specialization of the physician; and any other relevant factors. *Id*. However, in all cases there remains a presumption, albeit a rebuttable one, that the opinion of a treating physician is entitled to great deference, its non-controlling status notwithstanding. Soc. Sec. Rul. 96–2p, 1996 WL 374188, at *4 ("In many cases, a treating physician's medical opinion will be entitled to the greatest weight and should be adopted, even if it does not meet the test for controlling weight.").

*Rogers*, 486 F.3d at 242 (footnote omitted). *See also Gentry v. Comm'r of Soc. Sec.*, 741 F.3d 708, 723 (6th Cir. 2014).

In the present case, the ALJ disregarded the treating physician rule in considering the opinions of Dr. Kathleen Perkins. In May 2014 Dr. Perkins completed an RFC questionnaire on which she indicated has she has been plaintiff's primary care physician since December 2009; that plaintiff has migraines with the pain radiating from her shoulder and neck to the back of her head; that the symptoms include nausea/vomiting, malaise, photosensitivity, visual disturbances, inability to concentrate, and inability to get out of bed; that plaintiff has migraines once or twice per week and they last for three days; that they are made worse by bright lights, noise, and moving around; that the headaches are made better by plaintiff lying in the dark, using cold/hot packs, and taking Imitrex and Topamax; that once or twice per week plaintiff would need to rest for up to three days before returning to work; that plaintiff can occasionally lift/carry less than ten pounds but never ten pounds or more; that during an eight-hour work day she can sit for two hours and stand for two hours, and must lie down for two hours; and that she would likely be absent from work more than four times per month due to her impairments or treatments (Tr. 319-21).

In April 2015, Dr. Perkins completed another RFC questionnaire in which she

expressed essentially the same opinions, but added that plaintiff would need a job that allows her to shift position; that she would need to take unscheduled breaks every 20 minutes; and that she could use her hands and fingers 25% of the time during an eight-hour workday and could use her arms for reaching 10-20% of the time (Tr. 324-26).

The ALJ gave Dr. Perkins' opinion "little weight" because "it appears to rely on the claimant's subjective reporting and is not supported by the treatment records . . . or by the claimant's reported activities of daily living" (Tr. 19). This explanation does not suffice to overcome the presumptive deference that a treating physician's opinion is due. Like fibromyalgia, migraines (which the ALJ has found to be among plaintiff's severe impairments, *see* Tr. 15) by their nature are an impairment that will be diagnosed largely based on subjective complaints. Further, treatment records are not lacking, contrary to the ALJ's suggestion. Plaintiff has received extensive treatment for the pain in her neck and shoulders, which has been linked to her migraines.[2] Nor does the record support the ALJ's statement that Dr. Perkins' restrictions are inconsistent with plaintiff's reported daily activities. Plaintiff indicated on her function report that "everything that I do gives me pain"; that she does some light housework; and that she goes shopping twice per week for two hours (Tr. 176-83). She testified similarly (Tr. 33-44). If the ALJ believes plaintiff's minimal daily activities are inconsistent with her claimed inability to work on a full-time basis, he must explain his reasons

---

[2] For example, in March and April 2013, plaintiff saw Dr. Michael Fugle at Dr. Perkins' request. Dr. Fugle diagnosed a soft tissue mass in plaintiff's cervical spine and a partial rotator cuff tear in her shoulder (Tr. 214-15). MRIs of plaintiff's shoulder and cervical spine in those months showed various abnormalities (Tr. 216-21). Plaintiff received various injections and other procedures in 2013-2015 at Neuro Pain Consultants (which diagnosed cervical radiculitis and cervical spondylosis) for pain in her neck, shoulders, back and hands (Tr. 274-318, 328-400, 531-55). Dr. Rapp of that clinic opined that plaintiff's "headache pain is coming from the greater occipital nerve" (Tr. 297, 311).

for this finding.

The ALJ also disregarded the treating physician rule regarding the opinion expressed by Dr. Angela Yurk. On an RFC questionnaire dated November 2013, Dr. Yurk indicated this was her first evaluation of plaintiff but that plaintiff had been seen in her practice since April 2013 (Tr. 322). The practice is the Neuro Pain Consultants, where plaintiff has received extensive treatment.[3] Dr. Yurk noted diagnoses of cephalgia and greater occipital neuralgia (Tr. 322). She opined that during an eight-hour work day plaintiff would need to take unscheduled 30-60 minute breaks every one to two hours, that her lifting/carrying ability is limited to less than five pounds occasionally; that plaintiff can use her right hand 10-20% of the time and her right fingers 50% of the time, and that plaintiff can use her arms for reaching 10-20% of the time (Tr. 322-23). Dr. Yurk also opined that plaintiff would miss work more than four times per month due to her impairments or treatments (Tr. 323).

The ALJ gave Dr. Yurk's opinion "no weight" because "it was based on one single evaluation and there are no accompanying treatment records" (Tr. 19). Dr. Yurk's opinion is not so easily disposed of. As the Sixth Circuit noted in *Rogers, supra,* the length of the treating relationship is only one factor the ALJ may consider in deciding the weight he will give to a treating physician's opinion. Further, the fact that Dr. Yurk's opinion was not accompanied by treatment records is irrelevant, given that she is a member of the practice where plaintiff received treatment for several months, and presumably she was privy to those treatment records (Tr. Tr. 274-318).

---

[3] Dr. Yurk indicated that her address is 7650 Dixie Hwy in Clarkston, Michigan (Tr. 323). This is the address of the Neuro Pain Consultants' "Dixie Office" (Tr. 291).

On remand, the ALJ must reassess Dr. Perkins' and Dr. Yurk's opinions in compliance with the treating physician rule and, as necessary, revise plaintiff's RFC evaluation and the hypothetical question(s) to the VE.

Finally, on remand the ALJ must consider the extent to which, if at all, plaintiff's RFC is affected by abnormalities in her lumbar spine. Plaintiff testified that her ability to sit and stand are limited by back pain (Tr. 34-35). An MRI of plaintiff's lumbar spine in October 2014 showed various significant abnormalities, including "advanced multilevel degenerative spondylosis," "central canal stenosis at L3-L4 and L4-L5," "displacement of the descending left L3 nerve root," "severe left neural foraminal stenosis at L3-L4 with suspected impingement of the exiting left L3 nerve root," "severe right neural foraminal stenosis at L4-L5 with suspected impingement of the exiting right L4 nerve root," and "severe bilateral neural foraminal stenosis at L5-S1" (Tr. 344). It is not apparent from the ALJ's decision that he was aware of these findings. On remand, the ALJ must review this MRI and, as appropriate, revise his RFC evaluation and his hypothetical question(s) to the VE.

For these reasons, the Court concludes that the ALJ's decision in this matter is not supported by substantial evidence. Remanding the matter for an award of benefits would not be appropriate at this time because the record, in its current state, is not such that "proof of disability is overwhelming or . . . proof of disability is strong and evidence to the contrary is lacking." *Faucher v. Sec'y of Health and Human Servs.*, 17 F.3d 171, 176 (6th Cir. 1994). Rather, the matter must be remanded so that the record may be further developed to address the deficiencies noted above. Accordingly,

IT IS ORDERED that defendant's motion for summary judgment is denied.

IT IS FURTHER ORDERED that plaintiff's motion for summary judgment is granted and this matter is remanded for further proceedings as specified above. This is a sentence four remand under § 405(g).

Dated: March 28, 2017
      Detroit, Michigan

s/Bernard A. Friedman
BERNARD A. FRIEDMAN
SENIOR UNITED STATES DISTRICT JUDGE

12

Certificate of Service

The undersigned certifies that the foregoing document was served upon counsel of record and any unrepresented parties via the Court's ECF system to their respective email or First Class U. S. Mail addresses disclosed on the Notice of Electronic Filing on March 28, 2017.

s/Teresa McGovern
Case Manager Generalist